Good morning, your honors. May it please the court, my name is Leonard Feldman. I'm counsel for DuPont. I'd like to reserve four minutes for rebuttal, but I'll keep track of my own time. As we note in our briefs, DuPont was held liable in this case even though it sold a legal product with an EPA mandated label, even though the entity that purchased the product was one of the most sophisticated and knowledgeable purchasers of herbicides in the world, and even though its product did exactly what it was intended to do, it killed plants. Now one reason that happened, and we submit an overwhelming reason that happened, is because the jury was not instructed on several key defenses, and this played out repeatedly during the trial. Whether the defense was superseding cause, actual knowledge, sophisticated purchaser, DuPont repeatedly requested instructions on those issues, and the district court refused to give them, and I would submit that the argument this morning that you heard from the government and plaintiffs highlights the importance of giving those instructions. What we heard the government say, for example, was that they purchased a potent herbicide with known risks. They did. What we heard Mr. Freeman say again is that plaintiffs claim that BLM made a miscalculation. We're not here to contest that. Maybe we did, and then Judge Fletcher, and I think the rest of the panel as well, asked a lot of very good questions about NEPA compliance, whether it's mandatory, whether it's not mandatory, and again Mr. Freeman said, well we're not here to contest this. That, I submit to you, is exactly the situation that the Idaho Supreme Court dealt with in the MECO case, which we cite in our briefs. That case involved a plaintiff who was claiming damages, even though the cause of the harm was that the seller of a mobile home had put methanol in the pipes as a antifreeze, and it was a violation of state law. So there was a violation of a legal obligation in that case, and the Idaho Supreme Court said in that case that that's not foreseeable, and that it is a superseding cause, and it didn't allocate harm. It found that that was a complete bar to liability. What was unforeseeable about what BLM did? I mean, one of the things that I was troubled by was that there was a lot of evidence in the record, and the district court made findings about DuPont's involvement and discussions with BLM about this process, getting the permit or the 24C permit to do the aerial application, so that it appeared that DuPont was very knowledgeable about what BLM's plans were. Your Honor, let me answer that question two ways. One is, as a legal matter, what MECO stands for is that when an entity violates the law, that is not foreseeable. Whether it's factually foreseeable or not is not information that when there's a violation of the law, it is not foreseeable, and it is a superseding cause as a matter of law. But getting back to your question and the factual portion of it, it's important to recognize that the 24C label, which was the label that allowed the aerial application of oust, was obtained by DuPont in 1996 with regard to the Birds of Prey National Conservation Area. That's when BLM approached DuPont and informed DuPont that the ground application process was too burdensome and asked for the ability to apply this aerially, and assured DuPont in the context of those discussions that the application sites were well aware, well away from any agricultural lands, showing as Mr. Freeman acknowledged, they were purchasing a potent product with known risks. They knew what those risks were and they made the decision to proceed. It wasn't until 1999, though, that these applications at issue in this case took place, and what BLM did there was rather than purchase the oust through a authorized seller, they went outside of the distribution chain. We understand this has something to do with the federal acquisition regulations, but the difference is this, from an authorized seller for DuPont, which would have provided, as you've heard a lot about, stewardship. Instead they went to a company called Target Specialties and Gourmet Inc., both of which are brokered sellers, and DuPont did not know, and the record's very clear about this, DuPont did not know about these applications until it was too late to prevent them, even assuming DuPont had the ability to do that. But let's just assume all that's true, as you put it, that maybe DuPont was involved. I don't think the record shows that. It's still an issue of fact. In the Watson case, for example, which is a failure to warn case, the court says, okay, we've got competing evidence on this, so we're going to have to instruct the jury on this issue, because if actual knowledge is shown, then we're in the Puckett case, where they decide that issue is a matter of law, but otherwise we're in the Watson case, where it comes in as an issue of fact and it relates to allocation. The same sort of thing plays out in the defective product and superseding cause arena, where we have Corbridge, which decides the issue as a matter of fact, and Lachance, which, excuse me, is a matter of law, and Lachance that decides the issue as a matter of law. In these cases are discussing the Idaho Product Liability Reform Act, and they're making a distinction between issues that can be and issues that have to go to the jury. DuPont didn't get either. DuPont was not able to tell this story to the jury that you just related here in response to Judge Akuta's question? It was able to tell the story, but... Did Judge Windmill in any way cut you off from from telling the story into saying, where's the government back there? They're responsible for the damage, not us. On your special verdict, you put zero when it comes to DuPont. Right, but on what basis? Did he prevent you from making that argument? No, absolutely not. But he emasculated the... How did he emasculate your case? Because... What did he do? What is the fundamental error in the way Judge Windmill ran the trial? Your simple and concise answer to that question is that there were no instructions whatsoever on superseding cause, no instructions whatsoever on known danger, no instructions whatsoever on sophisticated purchase... Well, you're dealing with comparative fault, right? Absolutely. Well, I don't see how his instructions prevented you from making that argument. That the government should be fully and solely responsible for the damage to the crops. The way in which they sprayed it, how they sprayed it, when they sprayed it, all of that. Your Honor, there were no instructions on any of those issues and that means that the jury was not properly instructed on those issues. Instructional error is a basis for reversal. The Watson case that plaintiffs cite and rely on makes very clear that these are issues that have to be given to the jury as part of the instructions. And then we just look at what the jury did. What the jury did was they answered seven questions yes for DuPont, three questions yes for BLM. They gave 70% of the liability to DuPont and 30% of the liability to BLM. There was no ability for them to factor in and give proper consideration to these defenses. And I would submit, as I said earlier, that these are in fact defenses that can and should be decided as a matter of law. This court will be called upon, I think, in response to BLM's arguments to decide some of these illegality issues under the DBA. If this court agrees that what BLM did was unlawful and that they didn't have the authority to do it, that is a superseding cause. That is what MECO held. That is what Corbridge held. That is what Puckett held. That's the Idaho law that applies here. This is one of those cases where the United States government made a mistake. As Mr. Freeman said, we made a miscalculation, maybe we did. Well, in this particular case, we have a defendant that sold a lawful product. The product did what it was intended to do. There's nothing defective about it. It just wasn't used properly. The defendant here, DuPont, also provided adequate labeling. There's an issue on that, but the actual knowledge defense assumes that there's a defective label and it says, you know, if the party that purchased it knew about these dangers, that's what they would have done. So, it's a legal duty to warn. And again, it's a superseding cause that cuts off liability. And DuPont never had the ability to make that argument because the district court consistently refused to instruct the jury on that. Did you provide the district court with some instructions? Yes, we did, Your Honor. There were instructions provided with regard to each of the defenses that I just mentioned. There were motions addressing each of these issues. In fact, what's ironic here is that in moving for summary judgment on many of these issues, the district court denied the summary judgment motion and said this is an issue of fact for the jury to decide. And never instructed the jury on the significance of those issues. Again, the cases that I've cited are cases that discuss and cite and acknowledge the Item of Product Liability Reform Act, which is the statute that requires the allocation with issues relating to misuse on the one hand and actual knowledge on the other. And yet, they decide it as a matter of law. In the one case that doesn't decide it as a matter of law, the Watson case, the jury had to be instructed on it. So, as I read the Idaho cases for their superseding cause requirement, they seemed to focus on something, some extraordinary circumstance unforeseeable. And so, it's your position that the government's flawed compliance or non-compliance with NEPA is that sort of extraordinary circumstance that was unforeseeable by DuPont. Is that correct? That's correct. And I guess from the perspective of the cases that I've seen up here, the government's flawed compliance with NEPA is rarely extraordinary. I mean, is that really something that an entity that's regularly working with government agencies would not be able to foresee that there could be flawed NEPA compliance or that someone would claim there was flawed NEPA compliance? Your Honor, the answer I gave earlier is really the same answer I give now, that as a matter of law, the Idaho Supreme Court has made this determination. And they concluded, in the MECO case in particular, that where you have a violation of state law, that is not foreseeable as a matter of law. But if you take a step back from that, and you're relying on MECO for that, because there they went through all the factors and did talk about it's extraordinary, it's unforeseeable. I didn't see that they relied solely on the legal non-compliance. Is that in, did I just miss that? Well, it's at 546 P. 2nd at 60, where the court held, quote, as a matter of law, the defendant's violation of state law, and again we're quoting, by placing a fresh water system, was in superseding cause. So that is, I think, the central holding of that case, and it's picked up in the MECO case. But did they say, did they go on to say that a violation of state law is a superseding cause? That's what I just read. Well, you said in that case, what they did. That's what they held. Okay. That's what they held. But they didn't make, they didn't generalize that and say any violation of state law is superseding cause. Is that right? They said that the defendant's conduct was a violation of state law and was therefore a superseding cause as a matter of law. They obviously weren't dealing with NEPA, but the legal principle there is the same that ought to apply here. Okay. Again, even if we take a step back and we say, all right, this is something that should be debated in front of the jury, there has to be jury instructions on that. There were none. And so we have that instructional error, and then of course, the assumed duty of stewardship claim, which also infected all of the defective product and failure to warn claims in this case, because it allowed the plaintiffs here to argue that DuPont was somehow held to a higher standard and that its stewardship policy could properly be a basis for liability. We think that also explains the jury verdict here. And of course, we've challenged as well the defective product and the failure to warn claims on FIFRA preemption grounds for the failure to warn claims. And on the defective product claims, we pointed out that there was no evidence that the design of ALST was defective. So what we're asking this court to do is to vacate the jury's verdict in its trial that has proper instructions and isn't tainted by improper claims. I'll reserve the rest of my time for Rebao. Members of the court, let me pick up where Mr. Feldman left off and talk for just a second about the assumed duty claim in this case to make sure the court has a clear understanding of that. Before I do so, I think the point is worth making, as Your Honor made, that DuPont's indictment of the BLM at trial, and this continued every day at trial, all of the evidence that is in DuPont's statement of facts in the brief before the court, every single fact in that brief comes from either an admitted exhibit or admitted testimony. There is not a single fact that DuPont wanted to get into evidence with respect to BLM's culpability for this disaster that they didn't get in. Well, why weren't they entitled to a superseding cause instruction? Well, Your Honor, I think it's... Let me go to that. Because DuPont's superseding cause argument posits the same thing over and over, BLM was also liable, BLM was also responsible. But does that remain a viable defense under Idaho law, though? No, not in the facts of this case. I would say that if there is under micro, micro has not been overruled. But the facts of this case are very important to keep in mind, Your Honor, because one has to look at what the superseding cause was supposed to be. And this is critical, because DuPont claimed at trial that it was the negligence and product misuse by the BLM, product misuse by the BLM. And the same argument was presented to Judge Windmill, who said, well, under the Idaho Product Liability Reform Act, that is a matter statutorily. Not even case law, but statutorily under section 6, 1405 sub 3. So they didn't argue a NEPA violation at trial? Is that what you're saying? Not only did they not argue it at trial, they didn't argue it here until on reply. If I can point out, on reply, DuPont says, well, the superseding cause was not negligence or product misuse, but if you look at the reply brief, it now says that it was BLM's unlawful and unauthorized so-called NEPA violation. Now, the reason that there would be no instruction for that, Your Honor, is because it would be a strange and incomprehensible doctrine of superseding cause if the superseding cause could precede the negligence it supposedly vitiates. Because superseding cause is where I put into action through my negligence something that's going to happen, and in comes a superseding cause and takes it another direction, vitiating my negligence. What DuPont is saying now, on reply, is that 10 years earlier, when NEPA did not consider oust, and then subsequently, when they decided that was going to be the way they're going to attack cheatgrass, that violation vitiated their negligence. That can't be. And in addition, if the court will look at ER 140, that argument was never presented to the district court. As you can see in excerpt of record 140, the court dispenses with the original formulation of superseding cause as product misuse by saying what Your Honor said, well, that can't be product misuse because you recommended it. The definition of superseding cause has to be both unforeseen and unanticipated. And BLM's use of oust was unquestionably foreseeable because it's undisputed that DuPont drafted the 24C label that gave the BLM the license, the label license, within the state of Idaho to apply oust aerially by helicopter. Otherwise, they couldn't do it. And DuPont drafted that. So it's no wonder that DuPont did not seek a jury instruction on product misuse, which is the instruction, to Your Honor's point, they never requested, because they knew that with respect to what use BLM was going to put the oust to, it was not only anticipated by DuPont, it was recommended by DuPont and written up in a formal 24C application to the state of Idaho and then approved by them. Now they say, but we don't know, didn't know that they were going to apply it near these agricultural parcels. They didn't buy the product for that purpose directly from DuPont, but through the product chain. And had, they don't say this, but presumably the argument is, had the government complied with NEPA, they might not have used it in this way. And so, therefore, that NEPA violation is a superseding cause. It's all speculation at this point on appeal, Your Honor. That argument was not made at trial, and they can't point to the record where it was.  We didn't know exactly where it was going to be applied. We didn't know it was going to be next to Farmer Jones' land or Farmer Smith's land. We thought it might be some other place on BLM rangelands. That was an argument that was presented to the jury. We had counterfactual arguments to that based upon emails and testimony that they did know more than they claimed they knew. That was all resolved against DuPont at trial. So they can't come here on appeal now and say, well, it was the NEPA violation that under micro was a violation of law, which we couldn't possibly have anticipated, because that wasn't the point. Why isn't that for the jury to decide, though? I think that's their argument. The jury should have been instructed. They could have rejected that theory, but they didn't have the opportunity to do so. The only thing that they argued below, to the jury or to the district court, was you can't misuse our product this way. That's a superseding cause. But they never proposed a product misuse instruction, and the reason they did not is because under Idaho Code, Product Liability Reform Act, that is simply a matter for apportionment. And the judge so found that in not one, but I think two different rulings where he said, look, product misuse is just something that goes into the argument to the jury. Then the jury is asked to apportion fault, and they did apportion fault. So that's the end of the matter. You don't need a superfluous instruction that says you can apportion fault based upon product misuse when the defendant is allowed to argue product misuse and did. And then there's an instruction to the jury that you can allocate fault based upon the totality of facts, which is what the instructions in the special verdict form also said. Now what they're saying on appeal is, let's bring NEPA into this. That didn't happen at trial. Let me turn for just a moment to these other instructions real quickly. That in response to your honor's comments, what was it that prevented them from putting their case on? He talked about, well, we had to have an actual knowledge instruction. The actual knowledge instruction actually was handled by the judge, saying that I can't give an actual knowledge instruction because the instruction you have proposed is an instruction that completely relieves the defendant of liability.  Such would relieve the manufacturer of all liability. And again, Judge Wendell said, that's a matter of apportionment under the Idaho Product Liability Reform Act, and so I can't give that instruction. On reply, citing to Watson, they say, well, maybe it isn't a complete blocking defense, but at least you should have been informed, the jury should have been informed, that actual knowledge is a defense. And that instruction was never proposed by them. The only instruction on actual knowledge proposed by DuPont was one that was a complete blocking defense, which is a misstatement of Idaho law, and the court properly refused to give it. I need to turn, just for a moment, to the assumed duty claim, and this will probably come up somewhat on reply. It's very key for this court to understand on assumed duty that the error alleged by DuPont in this case is that the district court erred by submitting that claim to the jury. And what they have done before this court is they have completely misstated our claim. They have said we made a claim we did not make. The assumed duty claim was only and solely for post-application conduct that occurred on the ground. The background is that once the disaster had occurred, DuPont dispatched people. They were basically public relations people. There were really no scientists or helpful people. They were there to spin. And they met with people and they told them things, different DuPont representatives. And they said, we'll help you. We'll give you information. We'll take soil samples. We'll tell you what to plant next year. That is the assumed duty claim. The assumed duty claim does not relate to anything pre-application. And if the court will look at the instruction that Judge Windmill gave, it is clear on its face that it only relates to post-application conduct. Now, there's no way that that particular claim was based upon any DuPont policy. The amicus briefs that are before the court seem to suggest, and they fall in line with DuPont, that we were taking corporate policy and making it into a tort duty. And we didn't. What we did was we said, if you made direct promises, and they did in the armory, on fields, in farmhouses where they met with these people. We said, if you make those kind of promises, you have assumed a duty. And under Uti versus Custer County, you've had an undertaking. So you go in, you make promises, and then you fail to live up to them. That was the assumed duty claim. It wasn't anything else. And a couple of citations on that real quickly, just to make sure that the court is not misled. If the court will look at ER 6, the court specifically said the assumed duty claim was a claim based upon post-application conduct. The court also, in ER 145, makes the same statement. And in denying the directed verdict motion in ER 234 and 35, he cites to our complaint, count 16, that alleges, quote, plaintiffs allege that after the oust applications, DuPont assumed a duty to plaintiffs, et cetera. So it was all for post-application conduct, nothing more. And there was no error in submitting that to the jury, because they had made those promises. What the judge decided post-trial on JMOL was, well, you didn't have reliance damages that flowed from that particular post-application claim for the four Bellwethers. You may on others, but you didn't for these four. And so he struck the damages on that and then reallocated it, exactly as DuPont suggested it should be reallocated, because he wanted to avoid an improper additor. That's all in his post-trial findings. Let me talk for just a moment about, because this is going to come up, I think, to the court. Let me come up with, address for just a moment, FIFRA preemption. Because I think this is pretty important for the court. I need to make sure that the court understands what our claim was and not what it is not. There is really no need for the court to reach FIFRA in this case, because we had negligent failure to warn claims that were not challenged by DuPont on appeal. And there was a strict liability failure to warn claim, which was not challenged by DuPont on appeal. Those particular claims and answers were questions 14, 15, and 16, respectively, on the special verdict form. That is, 14 was strict liability based on failure to warn. Misbranding was 15. And negligent failure to warn was number 16. 14 and 16 are not challenged. DuPont focuses a lot on fearful misbranding. And I just want to point out to the court a couple of things. First, with respect to FIFRA, all of this discussion in DuPont's brief about parallel test and equivalent instructions and so on is, again, miscasting our claim. Our claim was not that you violated some state rule. They did. And the answer to those questions were yes on the verdict form. Our claim on question 15 is that you violated FIFRA. You didn't violate some state rule. You actually violated FIFRA. And the instructions that were given, the two instructions that were given, not challenged on appeal in terms of their content, are that the jury was instructed that FIFRA has three things that you can't do on your label. You can't have false and misleading statements. You can't have inadequate instructions for use. And you can't omit necessary cautions or warnings. In all three instances, we put on a lot of evidence at trial that said this label violates all three of them, even though it has EPA acceptance. That doesn't matter because under FIFRA, that's merely a presumption. It's nothing more than that. And you can overcome that presumption. The instruction that was given to the court or to the jury was you're instructed that EPA approval or acceptance of this label is prima facie evidence, but it is not, but is merely a presumption that can be overcome. So to say that there was something wrong with the instructions that were given to the jury about the FIFRA element or the failure to warn or misbranding is simply wrong because the attack was an attack on the label directly with expert testimony and with testimony from EPA officials and other people. Applicator people came and testified saying, I can't understand this label. I don't know how to follow it. And that incidentally was the reason why the BLM, with respect to its own negligence, was found not negligent for not applying the label or violating FIFRA. They were found not negligent. And the BLM was found not negligent for not supervising the applicators, and they were found not negligent for violating the Idaho Chemigation Act. But they were found negligent in the selection and the application, selection of application sites and the selection of the chemical to go on those application sites. So the FIFRA argument is misguided. I wanted to talk very, very briefly also, I have just a minute left, about the allocation. Because every legal theory in our case supported the same damages, there's just no authority that the plaintiffs on appeal need to prevail on every single theory in order to have the case survive appeal. DuPont cannot prevail on this appeal by simply knocking one leg out of the six-leg stool, which is what they're attempting to do. There was no claim below that the court had to fashion a jury verdict form based upon allocation on claims. In other words, if you have five causes of action and two defendants, do you have to allocate different measures of damages, or I'm sorry, different measures of negligence on each of those claims? It would be impossible to do. And it would also be impossible for the district court to fashion a judgment on that because how do you decide what portion of the judgment relates to which defendant? So the DuPont position simply ignores Webb and this court's decision in Webb that a verdict will be upheld on a valid theory, even if there's a legally defective theory thrown in there. The only question for the court to worry about under Webb is whether the jury only decided liability on a defective theory, which cannot be the case here because it was a special verdict form and the jury answered separately on each of the questions that it was asked to answer, yes. Thank you. Thank you, Your Honor. Very briefly, starting with superseding cause, actual knowledge, sophisticated purchaser, all of those issues were raised below DuPont. Did you argue NEPA violation below, that that was the basis for saying there was a superseding cause? It was raised on a summary judgment motion where- But you raised it at trial. Yes, it was raised at trial. Did you give them a jury instruction that was tailored to that? No, we gave the court a jury instruction that was tailored to superseding cause. That's the defense. Did you present evidence in front of the jury that there was a failure to comply with NEPA? The plaintiffs, I believe, presented that. I'm not sure that DuPont did, but it was certainly part of our superseding cause argument and it is legally significant under Idaho law. It wasn't necessary at any point to have a NEPA instruction. It was simply necessary to have a superseding cause instruction, which would have allowed us to make that argument. And that argument was never given. And the notion- The opposing counsel says that the argument you're making now, that because of the failure to comply with NEPA, as a matter of law, it was unforeseeable how the herbicide would be applied. They say, you never made that argument at trial. That argument could not have been made at trial because at trial, there was no conclusion or ruling by the district court that there had been a NEPA violation. It was a contested issue. It was not until the district court issued its findings of fact and conclusions of law that we saw that. And then, of course, we now have played this out on appeal that the issue's not being contested, that we submit to you that you can address it as a matter of law. The argument we made below was a factual argument that the jury had to be instructed on it. And what we asked for was a new trial. Just a post-view. Absolutely. That's all it is. And we stand by- If that was really your theory at the time of trial, you should have advanced it to the district court. Your Honor, the theory that we advanced to the district court- You've been thinking about this case for a long time. This is a very complex trial. A very complex matter that's been going on for a long time in the district court. I understand that. It's been hotly contested. And I'm sure if this theory had come to your mind beforehand, you would have advanced it to the district court. Your Honor, the argument that was made to the district court was that there had to be a superseding cause instruction. We stand by that argument. If the court accepts that argument, the matter has to be remanded for a trial with a superseding cause instruction. If you find a NEPA violation, we submit that you can address it as a matter of law, but it's not necessary to do that. If I could have some more time to address the other issues, I'd appreciate it. But otherwise, I'll- Your time is up. Thank you, Your Honor. Thank you. It's been a long morning. We appreciate your arguments. All counsel, government included, on this very interesting case. It's complicated, and it's been highly contested. And we do appreciate your arguments. And we'll submit both matters at this time. Thank you. And we'll be in recess until tomorrow. All rise. This court for this session stands adjourned. It's a little tricky here.
judges: Fletcher B. , Paez, Ikuta